FILE NC



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable William H. Davis
County Attorney
Dimmit County
Carrizo Springs, Texas

Dear Sir:

Opinion No. O-2429
Re: Whether or not prosecution will lie against employer under Article 705e, Vernon's Annotated Penal Code, for failure to secure health certificate or failure to have regular examinations made.

This will acknowledge receipt of your letter of May 29, 1940, requesting the opinion of this department as to whether or not prosecution will lie against an employer who works in or about a business establishment selling food and drink to the public, preparing and dispensing such food, who fails to secure a health certificate from a physician and display the same; or who fails to have his person regularly examined for infectious or contagious disease.

Article 705c, Vernon's Annotated Penal Code, reads in part as follows:

"Section 1. No person, firm, corporation, common carrier or association operating, managing, or conducting any hotel or any other public sleeping or eating place, or any place or vehicle where food or drink or containers therefor, of any kind, is manufactured, transferred, prepared, stored,

Honorable Wm. H. Davis, Page 2

packed, served, sold, or otherwise handled
in this State, or any manufacturer or vendor
of candies or manufactured sweets, shall work,
employ, or keep in their employ, in, on, or
about any said place or vehicle, or have de-
livered any article therefrom, any person in-
fected with any transmissible condition of
any infectious or contagious disease, or work,
or employ any person to work in, on, or about
any said place, or to deliver any article
therefrom, who, at the time of his or her em-
ployment, failed to deliver to the employer or
his agent, a certificate signed by a legally
licensed physician, residing in the county
where said person is to be employed, or is em-
ployed, attesting the fact that the bearer had
been actually and thoroughly examined by such
physician within a week prior to the time of
such employment, and that such examination dis-
closed the fact that such person to be employed
was free from any transmissible condition of
any infectious or contagious disease; or fail
to institute and have made, at intervals of
time not exceeding six months, actual and
thorough examinations, essential to the find-
ings of freedom from communicable and infectious
diseases, of all such employees, by a legally
licensed physician residing in the county where
said person is employed, and secure in evidence
thereof a certificate signed by such physician
stating that such examinations had been made of
such person, disclosing the fact that he or she
was free from any transmissible condition of any
communicable and infectious diseases.

"Sec. 3.  All health certificates called
for by this Act shall be displayed for public
inspection at the place where the person named
thereon is employed, and shall not be removed
from such place during the continuance of such
employment except by a public health officer,
his duly appointed agent, or upon valid court
order. . ."

"Sec. 4.  The failure of any person, firm,
corporation, common carrier or association engaged

in any of the businesses described in this
Act, to display at the place where any of the
operations of such businesses are being con-
ducted, a valid health or registration certifi-
cate, as required by this Act, for each person
employed in, on, or about such place, shall be
prima facie evidence that the said person, firm,
corporation, common carrier or association, in
violation of requirements called for by this Act,
failed to require the exhibition of the pre-em-
ployment health certificate, of such person and
failed to institute and have made of such per-
son, actual and thorough examinations necessary
to the findings of freedom from communicable
diseases at intervals of time not exceeding six
months.

"Sec. 5. Whoever violates any provision
of this Act shall be fined in an amount not ex-
ceeding Two Hundred Dollars ($200). Each act
or omission in violation of any of the provi-
sions of this Article, shall constitute a separate
offense and shall be punishable as hereinabove
prescribed."

As we pointed out in Opinion O-1585:

"It is plain to see that this Act makes
it unlawful, first for proprietors to work or
employ employees with infectious or contagious
disease; second, for proprietors to work employ-
ees who did not hand over to such employers
valid health certificates; third, for proprie-
tors failing to require physical examinations
of employees; fourth, for manufacturers or ven-
dors of candies or manufactured sweets to sell
to persons who do not have valid health certifi-
cates, or who do not have display cases as re-
quired by law; fifth, for proprietors failing
to display certificates."

In that opinion we expressed some doubt as to
whether or not Article 705c, of the Penal Code, makes it
an offense for proprietors to work with infectious or con-
tagious disease, or for failure to have an examination
made by a physician or for failure to display their own
health certificate. Your request does not raise the question

of whether or not it is made an offense for proprietors to work with infectious or contagious disease, and therefore we shall confine this opinion to the question of whether or not it is unlawful under Article 705c of the Penal Code for a proprietor to work without having examination made by a physician or for a proprietor to fail to display his own health certificate.

Articles 1, 3, and 6 of the Penal Code of this State provide:

"Article 1. The design of enacting this Code is to define in plain language every offense against the laws of this State, and affix to each offense its proper punishment."

"Article 3. In order that the system of penal law in force in this State may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, unless the same is made a penal offense, and a penalty is affixed thereto by the written law of this State."

"Article 6. Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the State, such penal law shall be regarded as wholly inoperative."

In keeping with these Articles it is the law of this State that a penal enactment must define with certainty the act or omission denounced as an offense. Ex parte Leslie, 87 Tex. Cr. Rep. 476; 223 S.W. 227; Ex parte Wilmouth, 125 Tex. Cr. Rep. 274; 67 S.W. (2d) 289; Cinadr v. State, 108 Tex. Cr. Rep. 147, 300 S. W. 64; Warner v. State, 118 Tex. Cr. Rep. 351, 42 S. W. (2d) 616.

We do not believe the statute sufficiently denounces the act or omission of the employer in failing to obtain a physical examination of his own person or in failing to display his own health certificate so as to create an offense as to him. Nor do we believe, as we shall later point out, that such was the intent of the Legislature.

In Murray v. State, 21 Tex. App. 620, 2 S. W. 757, 57 Am. Rep. 623, an information against the defendant charged him with violating Article 683 of the Penal Code of 1885 for wilfully and mischievously injuring a locomotive engine. Said Article 683, however, related to the destruction of, or injuries done to, "growing fruit, corn, grain, or other agricultural products or property, real or personal"; and the court held the information insufficient to charge an offense. In this connection the Court quoted with approval the following language of Mr. Dillon in the case of U. S. vs. Clayton:

"'...For these reasons, whose cogency is obvious, the law is settled that, in construing statutes, the language used is never to be lost sight of, and the presumption is that the language is used in no extraordinary sense, but in its common, every-day meaning. When courts, in construing statutes, depart from the language employed by the legislator, they incur the risk of mistaking the legislative will, or declaring it to exist where, in truth, it has never had an expression. The legitimate function of courts is to interpret the legislative will, not to supplement it, or to supply it. The judiciary must limit themselves to expounding the law; they cannot make it. It belongs only to the legislative department to create crimes and ordain punishments. Accordingly, courts, in the construction of statutable offenses, have always regarded it as their plain duty cautiously to keep clearly within the expressed will of the legislature, lest otherwise they shall hold an act or omission to be a crime, and punish it, when

in fact the legislature had never so intended it. "If this rule is violated", says Chief Justice BEST, "the fate of the accused person is decided by the arbitrary discretion of the judges, and not by the express authority of the laws." The principle that the legislative intent is to be found, if possible, in the enactment itself, and that the statutes are not to be extended by construction to cases not fairly and clearly embraced in their terms, is one of great importance to the citizen. The courts have no power to create offenses, but if, by a latitudinarian construction, they construe cases not provided for to be within the legislative enactments, it is manifest that the safety and liberty of the citizen are put in peril, and that the legislative domain has been invaded. Of course, an enactment is not to be frittered away by forced constructions, by metaphysical niceties, or mere verbal and sharp criticisms. Nevertheless the doctrine is fundamental in English and American law that there can be no constructive offenses; that, before a man can be punished, his case must be plainly and unmistakably within the statute, and, if there be any fair doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused . . ."

In Patillo v. State, 120 Tex. Cr. Rep. 568, 47 S. W. (2d) 847, it was held that a statute penalizing riding on a "train or street car or interurban car" in coach or compartment not designated for one's race was inapplicable to one riding in a "bus" operated by a street railway company. We believe it equally clear that an act aimed at requiring an employer to see that his employees have health certificates and are regularly examined does not apply to compel the employer himself to submit to such examination or display his own health certificate in the absence of language requiring that this be done.

The intent of the Legislature is of paramount importance in construing a statute, and the conclusion reached in the preceding paragraph is strengthened by looking to the

Honorable Wm. H. Davis, Page 7

emergency clause of House Bill 142, Acts 1939, 46th Legis-
lature, Ch. 6, p. 231. This is an amendatory enactment,
but each act of the Legislature since 1921 dealing with
the same subject matter has had the same or a similar
emergency clause. See Sec. 7, Acts 1921, 37th Leg., Ch.
66, p. 134; Sec. 4, Acts 1937, 45th Leg. ch. 356, p. 707.
This clause reads in part as follows:

    "Sec. 2. Emergency Clause. The fact
that many food and drink establishments and
factories are not required under the present
law to have their employees examined or secure
health certificates. . ." (Underscoring ours)

    Thus it appears that the primary intent of the
legislature was to reach employees of food and drink estab-
lishments. Consequently, it is the opinion of this depart-
ment and you are respectfully advised that Article 705e,
Vernon's Annotated Penal Code, does not create an offense as
to a proprietor of a food and drink establishment for the
failure of such proprietor to have an examination of his per-
son made by a physician for the purpose of determining freedom
from infectious or communicable disease or for failure to dis-
play his own health certificate in his establishment.

                    Very truly yours

                    ATTORNEY GENERAL OF TEXAS

APPROVED JUN 15, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

                    By    *Walter R. Koch*
                            Walter R. Koch
                               Assistant

                    By    *James D. Smullen*
                            James D. Smullen

JDS:ew



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN